LANIER, Judge.
This is a suit to enjoin the October 22, 1983 primary election for the St. Tammany Parish Police Jury. Made defendants are the Secretary of State of Louisiana (Secretary), the St. Tammany Parish Council (Council) and all candidates who qualified for the election. Candidate Jerry Kenneth Sehwehm filed declinatory and dilatory exceptions alleging insufficiency of service of process and improper use of summary procedure. The Secretary filed dilatory exceptions of prematurity and unauthorized use of summary proceedings, a peremptory exception of no cause of action and a motion to dismiss alleging that the “plaintiff has unduly delayed in seeking this injunctive relief and has by her own inaction forfeited her rights, if any, to a summary proceeding at this time.” The trial court sustained “the exceptions in the proceedings” and dismissed the suit. This devolutive appeal followed.
*225 FACTS
On September 13,1980, the people of St. Tammany Parish (Parish) voted to adopt a home rule charter which provided for a Parish President and Parish Council ⅛ lieu of the Police Jury form of government. The new Parish Council was composed of 16 persons, two elected at large and 14 elected from single member districts. The 14 council districts were the same as the prior 14 Police Jury districts established by a 1979 federal court order. Jacqueline Carr represents Parish Council District 13.
On September 11,1982, the people of the Parish voted to repeal their home rule charter. On October 18,1982, suit (Vinturella v. Unangst) was filed contesting this election.
On January 20,1983, the Council adopted an ordinance to reapportion the 14 single member districts based on the 1980 census. This ordinance provided that the districts established would be “the Districts, for which persons shall qualify for election therefrom to the governing body of St. Tammany Parish, La., to take office on the 2nd. Monday in January, 1984”.
By letter dated May 31, 1983, the United States Department of Justice (Justice) advised the Council that it did not interpose any objection to the charter repeal election of September 11, 1983, or the change back to the Police Jury form of government.
On June 16, 1983, the trial in Vinturella v. Unangst was held in the district court. On July 12,1983, the trial judge ruled that the charter repeal election was valid. On July 22, 1983, an appeal of that judgment was taken to this court.
The qualifying period for candidates for the 14 seats on the Parish governing authority was July 25-29, 1983. On July 25, 1983, Jacqueline Carr qualified for the office of “POLICE JUROR/COUNCIL MEMBER, DISTRICT 13, ST. TAMMANY PARISH, LOUISIANA, PRESENT PLAN”. By letter dated July 26, 1983, the Attorney General of Louisiana advised the St. Tammany Parish District Attorney that since neither the Police Jury plan of government nor the 1983 reapportionment plan had been approved by Justice, the Parish was still under the councilmanic form of government, the reapportioned new Police Jury districts were not in effect, qualification papers should be accepted by the Clerk of Court for either councilman or police juror, a candidate who qualified for councilman could convert to police juror if the plan of government were approved and a candidate would run in the new Police Jury district if the reapportionment were approved.
On July 27, 1983, Carr requalified for the office of “Councilman Dist. 13 (redistricting plan in effect for the 1979 councilmanic elections, present district represented)”. Her qualifying papers of July 25,1983 were voided.
On July 27, 1983, Stanford Allen Owen qualified for “Parish Council Member-District 9”. On July 28,1983, Joseph M. Shoemaker, Jr. qualified for “Councilman District # 9”. On July 29, 1983, Raymond W. Ward qualified for “Parish Councilman, District 13”, Janice Marline Houston qualified for “Parish Council District 13”, and Willard J. Nolan qualified for “COUNCIL-MEMBER DISTRICT 13”.
By letter dated August 1, 1983, Justice advised the Council that it did not interpose any objection to the redistricting of the councilmanic districts.
On August 3, 1983, six of the candidates for the St. Tammany Parish governing authority filed suit (Sharp v. Brown) in the 19th Judicial District Court, Parish of East Baton Rouge, seeking to enjoin the October 22, 1983 primary election. Carr was not a party to this suit. The suit alleges that the judgment in Vinturella v. Unangst was on appeal and not final; the Attorney General of Louisiana advised that the Parish was still under the councilmanic form of government and that candidates for the parish governing authority could qualify for both councilman and police juror; the filing fee for these positions is different; the candidates qualified for the old districting plan; the new districting plan was approved after qualifying was closed and the candidates are now qualified in districts that no longer exist; and some candidates qualified for the *226 offices of parish president and councilman-at-large which no longer exist. The suit asked that the Secretary be enjoined “from holding said election until it is determined which form of government, the Home Rule Charter or the Police Jury, shall govern this Parish and until this court can order qualifying reopened to allow qualifying in the districts as they now exist.” On August 9, 1983, the Clerk of Court of St. Tammany Parish (Clerk) intervened and requested that she either be ordered to recertify the candidates in the new districts or reopen the qualifying period to allow candidates to qualify in their correct districts. Also on August 9, 1983, candidate Schwehm intervened and objected to delaying the scheduled primary election. The original plaintiffs amended their petition on August 12, 1983, to provide that since the filing of the original petition they learned that the Police Jury plan of government was given preclearance by Justice by letter dated May 31, 1983; the qualifying for candidates for the governing authority of St. Tammany Parish should be for police juror in the new districts; and the Secretary should be enjoined from printing the ballots for the October 22, 1983 election until either the Clerk recertifies the candidates for the office of police juror in the new districts or the qualifying period was reopened and the candidates qualified for the proper office in the proper district. On August 17, 1983, a consent judgment was rendered in Sharp v. Brown ordering the Clerk to recertify the persons who qualified for the offices of councilman in the Parish as properly qualified for police juror in the new Police Jury districts. The Secretary was ordered to accept the recertification and print the election ballots accordingly. Carr, Ward and Nolan were recertified in the new District 13. Houston was recertified from old District 13 to new District 10. Owen and Shoemaker were recertified from old District 9 to new District 13.
Substantial differences exist between the old District 13 and the new one. The new one only has approximately one-sixth of the same geographical area of the old one, has approximately 3300 less people and has 50,-000 more acres. Carr lives in the common one-sixth portion of each district.
Carr first received actual knowledge of the judgment in Sharp v. Brown in the latter part of August 1983. Carr has not received legal notice of that ruling.
This court affirmed the trial court judgment in Vinturella v. Unangst, 440 So.2d 775 (La.App. 1st Cir.1983).
This suit was filed on September 19,1983. The trial court judgment was signed on September 23,1983, and the order of appeal was signed that same day.
CONSTITUTIONALITY OF FIVE-JUDGE PANEL
La. Const, of 1974, art. V, § 8(A) provides that each court of appeal “shall sit in panels of at least three judges selected according to rules adopted by the court.” By Act 506 of 1980, effective January 1, 1981, in all election cases involving objections to candidacy and contests of elections, the courts of appeal of Louisiana were required to sit and render judgment en banc. La.R.S. 18:1409(H). This legislation is constitutional. Regira v. Falsetta, 405 So.2d 825 (La.1981); Carrere v. Castano, 397 So.2d 798 (La.1981); Hargrave, Louisiana Constitutional Law, 43 La.L.Rev. 505-506 (1982). See also Rule 1-5, Uniform Rules, Courts of Appeal. By Act 137 of 1983, effective June 24, 1983, La.R.S. 18:1409(H) was amended to provide as follows:
The appellate court shall sit en banc in all election contests involving candidates for offices voted on throughout the state or throughout a congressional district, justice of the supreme court, judge of a court of appeal, membership on a state board or commission, district judge, district attorney or membership in the state legislature. In all other cases arising under this Chapter, the court may sit in panels of three or more as directed by the chief judge.
Carr contends that Act 137 of 1983 discriminates against local elected offices, is a suspect classification impinging on a funda *227 mental right and is unconstitutional as a violation of the equal protection clauses of the United States and Louisiana Constitutions. Carr cites no federal or state jurisprudence to support this contention.
The law applicable to such a claim is accurately set forth in Williams v. Lallie Kemp Charity Hospital, 428 So.2d 1000, 1009-1010 (La.App. 1st Cir.1983), writ denied 434 So.2d 1093 (La.1983), as follows:
The Louisiana and federal constitutions both require equal protection of the laws. U.S. Const. Amend. XIV; La. Const, art. I, § 3. When a claim is made that a law violates these provisions, and the claimant belongs to a class receiving disparate treatment, a determination must be made as to whether the law impinges on a “fundamental right” or operates to the disadvantage of some “suspect class.” If the law does either of the above, it will be subject to strict scrutiny and be declared invalid unless it is shown that a “compelling governmental interest” exists; if neither a suspect class nor a fundamental right is involved, the test is whether the discriminatory treatment is supported by any rational basis reasonably related to the governmental interest sought to be advanced by it.
Suspect classes are those so recognized by the Supreme Court, and they involve classifications based on race, alienage, national origin, or some other attribute held by discrete and insular minorities.
The number of fundamental rights is likewise finite. Those that have been recognized include free speech, voting, interstate travel, fairness in the criminal process, fairness in procedures concerning governmental deprivations of life, liberty or property, and privacy.
Local governmental subdivisions and political subdivisions, as those terms are defined in La. Const, of 1974, art. VI, § 44(1) and (2), are not a suspect class recognized by the jurisprudence. There is no fundamental right to have a certain number of judges on an appellate court hear a person’s case (except the minimum number of three for the courts of appeal and the mandatory en banc for the Supreme Court required by the Louisiana Constitution). The Louisiana Constitution specifically authorizes the courts of appeal to sit in panels of three or more. Since Carr’s alleged discrimination does not involve a fundamental right or a suspect class, we must only determine if the discriminatory treatment provided by Act 137 is supported by any rational basis reasonably related to a governmental interest.
La.R.S. 18:1409(F) requires courts of appeal to hear an election case involving an objection to candidacy or a contest of an election within 48 hours after the record is lodged and render a' judgment within 24 hours after the case is argued. This is an expedited appeal that takes priority over other matters. The judges of the courts of appeal must leave their routine duties and assemble at the seat of the court to accommodate this requirement of the law. Because of the numerous elected state and local offices in this State, there are numerous election suits. The workload of the courts of appeal was significantly increased with the transfer of the criminal jurisdiction on July 1, 1982. To secure relief from this increased burden and the disruptions of the ordinary decision making process caused by election suits, the legislature of Louisiana, in part at the request of the courts of appeal, enacted Act 137. The distinction provided by Act 137 between candidates entitled to an en banc panel and those entitled only to a panel of three or more is essentially drawn (although not precisely) between offices in the executive, legislative and judicial branches of state government and offices of local government. (Compare Articles III, IV and V of the Louisiana Constitution of 1974 with Article VI.) The number of elected offices in the first category is significantly less than those in the latter. Act 137 provides significant relief to the heavy case burden presently carried by the courts of appeal of Louisiana, reduces disruption to the normal decision *228 making process and does not affect the quality of justice. This is a rational basis reasonably related to a governmental interest. Act 137 is constitutional.
ENTITLEMENT TO INJUNCTION
Carr objects to her own candidacy [La.R.S. 18:1401(A) ] because she was rectified from candidate for Parish Council in old District 13 to candidate for Police Jury in new District 13 pursuant to a judgment rendered in litigation (Sharp v. Brown) to which she was not a party. Carr contends she is entitled to an injunction to prevent irreparable injury because she has been ordered to run in a district in which she does not choose to run. La.C.C.P. art. 3601; La.R.S. 18:1414; Cf. Perez v. Edwards, 336 So.2d 1072 (La.App. 1st Cir.1976), writs refused, 337 So.2d 519, 872 (La.1976). Carr cogently argues that the judgment in Sharp v. Brown is not binding on her because she was not a party to the suit. However, even if we assume this contention correct, Carr failed to demonstrate irreparable injury, loss or damage. When this suit was filed, the 1983 reapportionment plan and the Police Jury form of government had been approved by Justice and this court had upheld the validity of the Home Rule Charter repeal election. The Sharp v. Brown judgment recertified Carr as a Police Jury candidate in the new District 13 where she was domiciled because the old District 13 and the councilmanic form of government no longer existed. If Carr did not choose to run in the new District 13, she could have withdrawn her candidacy. La.R.S. 18:501-502.
The most serious claim urged by Carr is that as the incumbent from old District 13, she was entitled to run for office in any district carved out of that district, that she could have qualified in one of five new districts and that the judgment in Sharp v. Brown deprived her of the opportunity to do so. A candidate for parish governing authority in the next regular election following reapportionment of a district may qualify to run in any new district created in whole or in part by the reapportionment of the old district, if the candidate had been domiciled in the old district for at least one year immediately preceding his qualification. La. Const. of 1974, art. III, § 4(A) and (B); La.R.S. 33:1225; Nicholson v. Grisaffe, 438 So.2d 550 (La.1983); McCarter v. Broom, 377 So.2d 383 (La.App. 1st Cir.1979); Toldson v. Fair, 374 So.2d 759 (La.App. 2nd Cir.1979), writ denied 375 So.2d 1182 (La.1979). Justice did not approve the 1983 reapportionment plan and Carr was not recertified into the new District 13 until after the close of qualifications for office. Carr had the right to elect in which district she would run after these events occurred. Although La.R.S. 18:469 only provides for the reopening of the qualifying period when a candidate in a primary election dies or no candidate has qualified, this statute cannot be interpreted to deprive a candidate of the right to elect which district in which to run granted by Article 3, Section 4 of the Louisiana Constitution. However, Carr has not attempted to exercise this right. She has not withdrawn her candidacy from the new District 13 and she has not attempted to requalify in another authorized district. Carr has not requested in the trial court or this court that she be allowed to do so. Had Carr attempted to do these things and been denied the right to do so, this case would be in a different posture. Because she did not, she cannot now prevail. Even if Carr had done these things, she would not be entitled to enjoin all of the district elections in the Parish. She would only be entitled to enjoin the election in the district in which she elected to run.
Carr asserts in her petition that the 1983 reapportionment plan for the Parish governing authority is unconstitutional because it does not adhere to the “one man-one vote” concept. Carr also alleges that she has filed a complaint in federal district court to enjoin the election on that basis. In the prayer of her petition, Carr seeks to enjoin the primary elections for the Parish governing authority until a proper reapportionment plan is adopted.
*229 The reapportionment of the Parish governing authority was the subject of a 1979 federal court judgment. Any change in that plan must be approved by the federal court. 42 U.S.C. 1973, et seq. We are not the proper forum to grant this portion of the relief sought.
CONCLUSION
For the foregoing reasons, the judgment of the trial court dismissing Carr’s petition for an injunction is affirmed at her costs.
AFFIRMED.